UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 5:21-CR-00102-01 |
| VERSUS | DISTRICT JUDGE HICKS |
| DYLAN HUDSON | MAGISTRATE JUDGE HORSNBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION FOR JUDGMENT OF ACQUITTAL

NOW INTO COURT, comes defendant herein, Dylan Hudson, who hereby files this Motion for Judgment of Acquittal to re-urge the Motion undersigned counsel made in open court following the conclusion of the Government's case-in-chief. Defendant herein would respectfully submit the following:

### Nature of the Case

On August 5, 2019, Shreveport Police Department Officer Dylan Hudson responded to a loitering trespass call at the Thrifty Liquor Store located at 4839 Greenwood Road in West Shreveport. While en route to this location via Monkhouse Drive, Hudson encountered the suspect, Markeil Tyson who hid behind a clump of bushes in an apparent effort to conceal himself from view. Hudson issued verbal commands for Tyson to walk to the front of his patrol vehicle and place his hands on the hood of same. However, Tyson instead attempted to flee from Hudson.

Hudson pursued Tyson on foot and upon catching up with him, struck Tyson with a closed fist and delivered a strike with his knee. With the assistance of two other officers who had arrived on scene, Hudson placed Tyson face down on the ground and attempted to place Tyson's hands

1

behind his back to apply handcuffs. Tyson pulled his arms away and Hudson used his taser to gain compliance.

Officers were then able to cuff one of Tyson's hands behind his back, but he continued to struggle against the officers and he pulled his other wrist toward his waistband. Hudson grabbed Tyson's head and pushed it onto the ground. Tyson again pulled his hand free and moved toward his waistband. Hudson drew his service weapon and struck Tyson in the head with it. Tyson continued to struggle and resist Hudson and the other officers' efforts to secure him in handcuffs. Tyson again pulled his hand toward his waistband. At that point, Hudson again deployed his taser. Hudson then used his radio to request a clear channel and delivered a kick to Tyson's head. Officers continued to struggle with Tyson who was still resisting but eventually placed him in handcuffs.

After Tyson was finally secured in handcuffs, Hudson and the other officers immediately disengaged and began checking themselves for possible injuries.

## Procedural History

Defendant was charged by Bill of Indictment with violating 18 USC 242, deprivation of rights under color of law. On December 12, 2022, jury trial commenced in this matter. The Government presented evidence for two days, and then rested its case-in-chief. At the conclusion of its case, defendant made an oral Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendant stressed in arguing said Motion that the Government had failed to prove that Hudson had acted willfully in contravention of the statute. Following argument, the Court denied said Motion. The Defendant did not put on any evidence and the matter was submitted to the jury for deliberation following closing arguments and instructions by the Court.

After several hours of deliberation, the jury submitted a note to the court stating that they were unable to reach a unanimous verdict. The Court gave the jury an "Allen" charge and instructed them to continue deliberations in order to attempt to come to a unanimous decision. Due to inclement weather in the Arklatex and the fact that the jury sent back a second note stating that they could not reach a verdict, the Court gave the jury the option of continuing deliberations or adjourning for the day and coming back the next morning to continue deliberations. The jury chose to adjourn for the day and return the next morning.

The following morning, jury deliberations began again, and the jury sent back a third note, requesting a definition for the word "willfully." The Court was unable to provide the jury with a more thorough definition than what it had previously provided in jury instructions.

Finally, several hours later, the jury sent back a final note stating that they were unable to reach a verdict. The Court declared a mistrial. The matter is now set for a status conference on January 4, 2023.

## Federal Rule of Criminal Procedure 29: Motion for Judgment of Acquittal

### I.   PROCEDURAL / LEGAL STANDARD

Federal Rule of Criminal Procedure Rule 29 allows for a defendant to "move for a judgment of acquittal, or the *renewal of such motion,* within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."

A "federal district court, which has properly retained jurisdiction of a case, has the power to grant a verdict of acquittal, before or after submission of the question of a defendant's guilt to the jury, if necessary to correct a manifest error. There are limits on this authority[1], and its exercise is reviewable in the Court of Appeals." *State of Ariz. v. Manypenny,* 672 F. 2d 761, 765 (9th Cir.

---

[1] cf. *U.S. v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947)

1982). The Ninth Circuit held that "a court has power to reconsider a timely motion for judgment of acquittal premised on insufficiency of the evidence when the court, which still retains jurisdiction of the case, decides, in considering another of defendant's motions, that its earlier denial of the Rule 29 motion was erroneous." *Id.* At 765-66. The Fifth Circuit has held that "the mere presence of some conflicting evidence in the record does not render a jury verdict improper." *U.S. v. Bates,* 850 F. 3d 807, 810 (5th Cir. 2017).

"In ruling upon a Motion for Judgment of Acquittal, a district court must determine whether the relevant evidence, viewed in a light most favorable to the Government, could be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *U.S. v. Varkonyi,* 611 F.3d 84, 85 (5th Cir. 1980).

In this case, there is not mere conflicting evidence in the record. There were *three notes* sent in from the jury wherein the jury foreman and *another juror* explained to the court that they could not reach a resolution. The jury also sent back a note that specifically requested more of a definition or clarification of the word "willfully."

When the defendant made his Motion for Judgment of Acquittal in open court following the conclusion of the government's case-in-chief, his argument was that the Government failed to present evidence which would be sufficient to show that the defendant acted willfully to specifically deprive Mr. Tyson of his civil rights.

Defendant contends there is now more reason to believe that the Government failed to prove its case, due to the fact that the jury could not reach a verdict, even following the Court's *Allen* charge and its encouragement to the jury to do so. In light of these facts and developments and specifically that the jury focused on the "willful" element of the offense in its deliberations, defendant now renews and re-urges his Motion for Judgment of Acquittal.

## II. "WILLFUL"

The crime that Mr. Hudson was charged with committing requires specific intent; the Government would have had to present evidence that Hudson "willfully" subjected Mr. Tyson to the deprivation of his constitutional rights. In order for the jury to have convicted Mr. Hudson of this crime, not only would they have been required to find that he did something such as intentionally commit a battery, but they also would have been required to find that he *specifically and willfully intended* to deprive Mr. Tyson of his constitutional rights by committing that act. While the Government may have shown that Mr. Hudson violated SPD policies and procedures by using the amount of force that he did and that some of the actions he took were perhaps unreasonable, it did not present the evidence required to show that he willfully intended to deprive Mr. Tyson of his civil rights. As undersigned counsel argued in its original Motion for Judgment of Acquittal, undersigned counsel does not believe that the Government presented sufficient evidence during its case-in-chief to convict Mr. Hudson of a violation of 18 USC 242.

In *Screws v. U.S.,* the seminal case regarding officers acting willfully under color of law to deprive citizens of their constitutional rights, the United States Supreme Court held "[w]e recently pointed out that 'willful' is a word 'of many meanings, its construction often being influenced by its context.'"[2] The Court further held that typically, "willfully" "denotes an act which is intentional rather than accidental," but "when used in a criminal statue, it generally means an act done with a ***bad purpose***."[3] The Court further held that when used in a criminal statute, "***something more*** is

---

[2] *Screws v. U.S.,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) (citing *Spies v. U.S.*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418).
[3] *Id.* at 101 (citing *U.S. v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381).

required than the doing of the act proscribed by the statue"[4] . . . "[a]n *evil motive* to accomplish that which the statute condemns becomes a constituent element of the crime."[5]

Further, the Court held in *Screws* that "the word 'willfully' was added to make the section 'less severe'. We think the inference is permissible that its severity was to be lessened by making it applicable only where the requisite bad purpose was present, thus requiring specific intent not only where discrimination is claimed but in other situations as well." *Id.* at 103.

## Argument

In viewing the evidence in a light most favorable to the prosecution, look no further than the Government's own "theme" throughout the trial, a quote by Mr. Hudson after he had viewed Hayes' dashcam video of the altercation: "This doesn't look good." Counsel submits that the Government's vilifying theme in their opening/closing argument and finally in rebuttal, ironically demonstrates how the "willful" element could not and was not proven to a reasonable trier of fact.

To prove the "willfully" element, the Government presented evidence that Defendant acted contrary to his POST-certified training and SPD policy. This evidence cannot, per se, demonstrate specific intent or that Defendant willfully deprived Tyson of his rights. **Even if Mr. Hudson specifically intended to act contrary to his training and SPD policy, it does not indicate that he had specific intent to deprive Mr. Tyson of his civil rights.**

Again, the best evidence is in Defendant's statement to Officer Hayes a few hours after the incident while watching the dashcam or MVS footage in the parking lot of Willis Knighton Work Kare: "This doesn't look good." This statement would seem to indicate to a reasonable trier of fact Hudson's realization of how physical the altercation truly was in order to effectuate Tyson's arrest

---

[4] *Id. at 101 (citing* Cf. *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604).
[5] Id at 101 (citing *Spurr v. U.S.*, supra, 174 U.S. at 734, 19 S.Ct. at 815, 43 L.Ed. 1150; *U.S. v. Murdock,* supra, 290 U.S. at 395, 54 S.Ct. at 225, 78 L.Ed. 381).

earlier that morning. It would also seem to indicate to a reasonable trier of fact that Hudson could understand how someone viewing the video of the incident might conclude that Hudson had acted improperly. Most importantly this statement by Hudson illustrates his lack of any specific intent to violate Tyson's civil rights during his arrest.

Counsel submits that if after viewing Hayes' dashcam video, Hudson had said "I should have hit him harder" or "that's what you get/deserve when you resist," or "he's lucky he's not in a coma," the outcome of the trial almost certainly would have been different. The willfulness element of 18 USC 242 almost certainly would have been satisfied and Mr. Hudson would have been convicted. Counsel would certainly not, in good faith, be requesting for Your Honor to enter a judgment of acquittal under such circumstances. The issue of specific intent, under those facts, would be very much a contentious issue admittedly in favor of a trier of fact finding Hudson *did* willfully deprive Tyson of his civil rights. However, such is not the case here. To the contrary, the very evidence the Government hung its hat on in the trial, Hudson's own words, indicate that he did not act willfully to violate Tyson's civil rights.

The Government's own expert witness admitted during cross-examination that Mr. Tyson's resistance could be classified as active, aggressive resistance on more than one instance; rather than the "passive resistance" that his fellow officers testified to. Mr. Hudson's actions were simply a response to Mr. Tyson's actions. Mr. Hudson did what he felt the situation necessitated in order to subdue Mr. Tyson— and while this may have violated Shreveport Police Department policy, it certainly did not violate Mr. Tyson's civil rights. There was no willful intent to commit an act—there was simply an officer taking the actions he thought necessary so that everyone remained safe, himself, his fellow officers and Mr. Tyson.

This unfortunate incident was essentially a "street fight" or altercation between these uniformed police officers and Mr. Tyson. Mr. Tyson's actions in initially refusing to place his hands on the hood of Mr. Hudson's patrol unit then fleeing and his self-confessed failure and refusal to give those officers his hands so that he could be secured in handcuffs dictated the unfortunate turn of events.[6] As soon as he was secured in handcuffs, Mr. Hudson immediately disengaged from any further physical or verbal contact with Tyson.

## Conclusion

The Government failed to present sufficient evidence in its case-in-chief to show that Mr. Hudson acted willfully to deprive Mr. Tyson of his civil rights contrary to 18 USC 242. While the court denied that Motion at the time it was raised, the defendant now renews the Motion pursuant to Federal Rule of Criminal Procedure Rule 29. It is clear, from the failure of the jury to reach a verdict that that the evidence of willfulness as viewed in a light most favorable to the Government was not sufficiently presented for the trier of fact at trial. As such, defendant now hereby prays that this Honorable Court grant his Motion for Judgment of Acquittal.

Respectfully submitted,

/s/: Eric G. Johnson
Eric G. Johnson, La. Bar Roll #22435
Rachel W. Bays, La. Bar Roll # 36083
Eric M. Whitehead, La. Bar Roll #38439
P. Michael Davis, Jr, La. Bar Roll # 37940
John D. & Eric G. Johnson Law Firm, LLC
415 Main St / P.O. Box 715
Minden, LA  71058
Phone: (318)377-1555
Fax:(318)377-1559

---

[6] Tyson freely admitted in his interview by SPD Violent Crimes Detectives shortly after the incident that he had intentionally resisted the officers and did not want to allow them to place him in handcuffs.

8

**Certificate of Service**

I hereby certify that on the 28th day of December, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF. Notice of this filing was sent by operation of the CM/ECF system to all parties.

Respectfully submitted,

/s/: Eric G. Johnson
Eric G. Johnson, La. Bar Roll #22435